**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JUDICIAL WATCH, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES SECRET SERVICE, <br><br> Defendant. | Civil Action No. 09-2312 (BAH) |

**MEMORANDUM OPINION**

Plaintiff Judicial Watch, Inc. brought this case to compel Defendant U.S. Secret Service to respond to a Freedom of Information Act ("FOIA") request. The plaintiff's FOIA request, sent on August 10, 2009, sought all White House visitor logs from the date of President Barack Obama's inauguration, January 20, 2009, through "the present." The FOIA generally requires the disclosure, upon request, of records held by a federal government agency unless the records are protected from disclosure under one of nine FOIA exemptions. In this case, the defendant has withheld all requested records, asserting that, while the Secret Service is an executive agency subject to FOIA, the documents in question are not agency records subject to FOIA disclosure. The plaintiff has moved for partial summary judgment on the issue of whether the requested documents are agency records subject to FOIA. The defendant has filed a cross-motion for summary judgment asking the Court to hold that the documents are not subject to FOIA. For the reasons discussed below, plaintiff's motion for partial summary judgment is granted and the defendant's cross-motion for summary judgment is denied.

**I.     BACKGROUND**

On August 10, 2009, Plaintiff Judicial Watch, Inc. sent a FOIA request to Defendant United States Secret Service seeking access to "[a]ll official visitor logs and/or other records concerning visits made to the White House from January 20, 2009 to the present." Compl. ¶¶ 3-5. The Secret Service responded to Judicial Watch's request with a letter, dated October 8, 2009, which informed Judicial Watch that the Secret Service interpreted the request to encompass "Access Control Records System (ACR) records and/or Workers and Visitors Entry System (WAVES) records." *Id.* ¶ 7. These two overlapping sets of records are used by the Secret Service to clear and track visitors to the White House Complex.

WAVES records consist primarily of information provided to the Secret Service by authorized White House Complex pass holders regarding proposed visitors to the White House Complex. Def.'s Statement of Mat. Facts Not In Dispute ("Def.'s SMF") ¶¶ 4, 6. The authorized pass holder electronically submits to the Secret Service information such as the identifying information of the visitor, including name, date of birth, and Social Security number, the date, time and location of the planned visit, the name of the staff member submitting the request, the name of the person to be visited, and the date of the request. *Id.* ¶ 5. The Secret Service uses this information to perform background checks on the proposed visitors to determine if there are any security concerns and to verify the visitor's admissibility at the time of his or her visit. *Id.* ¶ 7.

Once an individual is cleared into the White House Complex, he or she is normally issued a visitor pass. The use of these passes at electronic pass readers located at the entrances to and exits from the White House Complex generates the second type of records – ACR records. *Id.* ¶ 9. The ACR records include information such as the visitor's name and pass number, the date

and time of the swipe, and the post at which the swipe was recorded. *Id.* ¶ 10. After a visit, WAVES records are normally updated electronically with ACR information regarding the time and place of entry and exit. *Id.* ¶ 11.

On September 15, 2009, in the interest of public transparency, the White House adopted a policy of voluntary public disclosure for WAVES records, subject to certain exceptions. *See* Declaration of Philip C. Droege, dated April 21, 2010, ("Droege Decl.") ¶¶ 16-18.

In the October 8, 2009 response to plaintiff's FOIA request, the Secret Service informed Judicial Watch that it had determined that WAVES and ACR records "are not agency records subject to the FOIA." Compl. ¶ 7. More specifically, the letter stated that the government's position is that "these records are records governed by the Presidential Records Act, 44 U.S.C. § 2201 et seq., and remain under the exclusive legal custody and control of the White House Office and the Office of the Vice President." October 8, 2009 Letter, Ex. E to Def.'s Mem.

Judicial Watch then sent an administrative appeal letter to the Secret Service contesting the Secret Service's denial of the request and, specifically, the assertion by the Secret Service that the requested records are not agency records subject to FOIA. Compl. ¶ 8. The Secret Service denied the appeal. *Id.* ¶ 9. Judicial Watch then filed the action currently before the Court on December 7, 2009.

On February 22, 2010, Judicial Watch moved for partial summary judgment, pursuant to Federal Rule of Civil Procedure 56, on the issue of whether the Secret Service visitor logs are agency records subject to the Freedom of Information Act, 5 U.S.C. § 552. In response, on April 21, 2010, the Secret Service filed a cross-motion for summary judgment on the same issue.[1]

---

[1] This case was reassigned to the current presiding judge on January 20, 2011.

## II.     STANDARD OF REVIEW

Congress enacted FOIA to promote transparency across the government. *See* 5 U.S.C. § 552; *Quick v. U.S. Dep't of Commerce, Nat'l Inst. of Standards & Tech.*, No. 09-02064, 2011 WL 1326928, at *3 (D.D.C. April 7, 2011) (citing *Stern v. FBI*, 737 F.2d 84, 88 (D.C. Cir. 1984)). The Supreme Court has explained that FOIA is "a means for citizens to know 'what their Government is up to.' This phrase should not be dismissed as a convenient formalism. It defines a structural necessity in a real democracy." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 171-172 (2004) (internal quotations and citations omitted). "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).

The strong interest in transparency must be tempered, however, by the "legitimate governmental and private interests [that] could be harmed by release of certain types of information." *United Techs. Corp. v. U.S. Dep't of Defense*, 601 F.3d 557, 559 (D.C. Cir. 2010); *see also Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 872 (D.C. Cir. 1992). Accordingly, Congress included nine exemptions permitting agencies to withhold information from FOIA disclosure. 5 U.S.C. § 552(b). "These exemptions are explicitly made exclusive, and must be narrowly construed." *Milner v. Dep't of the Navy*, 131 S. Ct. 1259, 1262 (2011) (internal quotations and citations omitted) (citing *FBI v. Abramson*, 456 U.S. 615, 630 (1982)); *see also Pub. Citizen, Inc. v. Office of Management and Budget*, 598 F.3d 865, 869 (D.C. Cir. 2010).

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law" based upon the pleadings, depositions, and affidavits and other factual materials in the record. Fed. R. Civ. P. 56(a), (c); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). The Court "need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court must view all inferences in a light most favorable to the non-moving party. *Tao*, 27 F.3d at 638 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 255 (1986)). The burden is on the moving party to demonstrate that there is an "absence of a genuine issue of material fact" in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

A defendant is entitled to summary judgment in a FOIA case if it demonstrates that no material facts are in dispute, it has conducted an adequate search for responsive records, and each responsive record, which is located, was either produced to the plaintiff or is exempt from disclosure. *See Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 368-69 (D.C. Cir. 1980). To meet its burden, the defendant may rely on relatively detailed, non-conclusory declarations. *McGehee v. CIA*, 697 F.2d 1095, 1102 (D.C. Cir. 1983). The defendant is entitled to summary judgment when "it demonstrates that each document sought is not subject to FOIA's disclosure requirements." *Citizens for Responsibility and Ethics in Wash. v. U.S. Dep't of Homeland Sec.*, 527 F. Supp. 2d 76, 88 (D.D.C. 2007) (hereinafter, "*CREW*") (citing *Exxon Corp. v. F.T.C.*, 663 F.2d 120, 126 (D.C. Cir. 1980)). Agency decisions to withhold information under the Freedom of Information Act are reviewed de novo by this court. *Judicial Watch, Inc. v. U.S. Postal Serv.*, 297 F. Supp. 2d 252, 256 (D.D.C. 2004).

### III.   DISCUSSION

Judicial Watch, in moving for partial summary judgment, has requested the Court declare that the Secret Service visitor logs are agency records subject to FOIA. In response, the Secret

Service has filed a cross motion for summary judgment on the same issue. Both parties appear to agree "that there is no genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and disagree simply about how the law applies to the facts at hand. *See* Pl.'s Mem. in Supp. of Mot. for Partial Summ. J. ("Pl.'s Mem.") at 1 ("[N]o disputes of material fact exist as to the nature of the records. . . ."); Def.'s Cross-Mot. for Summ. J. at 1 ("[T]here is no genuine issue as to any material fact. . . ."). Therefore, it is appropriate to enter judgment on this specific question now.

The Secret Service advances three arguments in support of its motion for summary judgment. First, the Secret Service argues that the WAVES and ACR records are Presidential records, and therefore not agency records subject to FOIA. Second, the Secret Service argues that the FOIA should be construed not to cover the WAVES and ACR records in order to avoid a serious Constitutional separation of powers question. Third, the Secret Service argues that, even if the WAVES and ACR records are subject to FOIA, the FOIA request in this case would be "virtually impossible to process without creating the unacceptable risk that sensitive records implicating national security concerns would be inappropriately released." Def.'s Mem. in Supp. of Cross-Mot. for Summ. J. and in Opp'n to Pl.'s Mot. for Partial Summ. J. ("Def.'s Mem.") at 2. For the reasons explained below, the Court will grant the plaintiff's motion for partial summary judgment and will deny the defendant's cross-motion for summary judgment.

### A. WAVES and ACR Records are Agency Records Under the FOIA

The central argument the Secret Service advances is that the WAVES and ACR records are not "agency documents" subject to FOIA, which is a prerequisite to federal jurisdiction. *See CREW*, 527 F. Supp. 2d at 88 ("Under 5 U.S.C. § 552(a)(4)(B) federal jurisdiction is dependent upon a showing that an agency has (1) improperly; (2) withheld; (3) agency records." (quoting

*Kissinger v. Reporters Comm. for Freedom of Press*, 445 U.S. 136, 150 (1980)) (internal quotations omitted)). The Court disagrees.

The Supreme Court has established a two-part test for evaluating whether a record is an agency record within the meaning of FOIA. "First, an agency must either create or obtain the requested materials . . . . Second, the agency must be in control of the requested materials at the time the FOIA request is made." *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 144-45 (1989) (internal quotations omitted). Applying this test, the Court finds the records are subject to FOIA.

Two other judges in this District have previously applied this standard to WAVES and ACR records, and both determined that the records are agency records subject to FOIA. *See CREW*, 527 F. Supp. 2d 76; *Wash. Post v. U.S. Dep't of Homeland Sec.*, 459 F. Supp. 2d 61 (D.D.C. 2006), *vacated on other grounds* 2007 U.S. App. LEXIS 6682 (D.C. Cir. Feb. 27, 2007).[2] This Court agrees with the conclusions of the other judges in this District that have considered this question and finds that the records are subject to FOIA.

### 1. The Secret Service "Creates or Obtains" the Records

The Secret Service does not appear to contest that it "create[s] or obtain[s]" the WAVES and ACR records. At a minimum, the Secret Service obviously obtains the records. Therefore, the Court's analysis of this first requirement will be brief.

The Secret Service describes the creation process for WAVES and ACR records as involving multiple steps. Normally, the process begins when authorized White House Complex pass holders, typically members of the Presidential or Vice-Presidential staff, provide the Secret Service with the personal information of a proposed visitor through an automated computer

---

[2] The Secret Service is a branch of the U.S. Department of Homeland Security. Therefore, the defendant in these prior opinions is effectively the same as in the current action, and many of the exact same arguments advanced here by the Secret Service were addressed in those prior opinions.

system. Droege Decl. ¶¶ 4-6. This information can also be provided in other ways, such as by e-mail, telephone, or physical delivery. *Id*. ¶ 6. In such instances, Secret Service personnel enter the information into the WAVES system. *Id.* This information is processed by the Secret Service to perform background checks on the proposed visitors, and to verify the admissibility of the visitors at the time of visit. *Id.* ¶¶ 5-6.

In describing this process, the Secret Service seeks to emphasize the role that Presidential and Vice-Presidential staff members play by providing much of the *information* that make up the records. "By focusing on the contents of the records, the Secret Service overlooks the process by which the records are generated," however. *CREW*, 527 F. Supp. 2d at 90 (citing *Wash. Post*, 459 F. Supp. 2d at 69 (D.D.C. 2006)). This distinction is important, because "[t]he FOIA deals with documents, not information." *Id.* (citing *Forsham v. Harris*, 445 U.S. 169, 185 (1980)). As in *CREW*, "the Secret Service invites the Court to elevate the contents of the record ahead of its creation." *Id.* at 91 (adding that "[t]his would insulate records that contain information supplied, perhaps even gleaned, from an external, non-agency source, even if the information represents only a part of the record, as it does here").

Regardless of what information may be supplied by outside actors, the WAVES and ACR records are largely generated by the Secret Service, and are undisputedly obtained by the Secret Service. Indeed, the records are generated specifically for use by the Secret Service. Therefore, the requirement under FOIA that the records be "create[d] or obtain[ed]" is clearly met in this case.

2.  **The Secret Service Controls the Records**

The Court now moves on to the second prong of the "agency records" determination. In addition to creating or obtaining the records, "the agency must be in control of the requested

materials at the time the FOIA request is made." *Tax Analysts*, 492 U.S. at 144-45 (internal quotations omitted); *see also Judicial Watch, Inc. v. Fed. Hous. Fin. Agency*, No. 10-5349, 2011 WL 3375576, at *2 (D.C. Cir. Aug. 5, 2011). To meet this "control" requirement, the records must have "come into the agency's possession in the legitimate conduct of its official duties." *Tax Analysts*, 492 U.S. at 145.

To determine whether an agency is "in control" of the materials, the D.C. Circuit has established a four-part test. The Court must consider "(1) the intent of the document's creator to retain or relinquish control over the records; (2) the ability of the agency to use and dispose of the record as it sees fit; (3) the extent to which agency personnel have read or relied upon the document; and (4) the degree to which the document was integrated into the agency's record system or files." *Judicial Watch, Inc. v. Fed. Hous. Fin. Agency*, 2011 WL 3375576, at *2 (quoting *Burka v. U.S. Dep't of Health & Human Servs.*, 87 F.3d 508, 515 (D.C. Cir. 1996)). Each of these considerations is taken up in turn below.

### i. The Secret Service Intends to Relinquish Control

The first factor of the determination, intent, weighs in favor of the Secret Service's assertion that the records are not under agency control. *See CREW*, 527 F. Supp. 2d at 92 ("The first factor, the intent of the document's creator (here, the Secret Service) to retain or relinquish control over the records, weighs in favor of the Secret Service."). The Secret Service points the Court to a Memorandum of Understanding ("MOU"), written in May 2006, to memorialize the understanding of both the Secret Service and the White House Office of Records Management ("ORM") as to how the WAVES and ACR records were to be used, and who maintained an interest in them.[3] Declaration of Donald E. White, dated April 20, 2010, ("White Decl.") ¶ 12.

---

[3] As noted in *CREW*, the MOU was executed after the Secret Service was previously sued for specific WAVES and ACR records under the FOIA. 527 F. Supp. 2d. at 92 n.22 ("The Court regards this self-serving agreement with

The MOU is unequivocal in asserting that the control over WAVES and ACR records is at all times maintained by the ORM and not the Secret Service. *See* MOU ¶ 17 (stating that the WAVES and ACR records "are at all times Presidential Records" and "are not the records of an 'agency' subject to the Freedom of Information Act"). Consistent with this stated intent, it has been the practice of the Secret Service to regularly transfer copies of the WAVES and ACR records to the ORM. White Decl. ¶ 13. It is worth noting that the actions of the Secret Service have sometimes been misaligned with its stated intent, however. For example, the Secret Service has continued to maintain copies of the WAVES and ACR data after transfer. *Id.* According to the Secret Service this retention has been "due to, among other things, then-pending litigation."[4] *Id.*

The stated intent of the Secret Service is unambiguously to relinquish control of the records, however, and the Secret Service's actions are not necessarily inconsistent with that intent. The "intent" factor of the analysis, therefore, weighs in the defendant's favor. *See CREW*, 527 F. Supp. 2d at 93 ("[T]he Secret Service's stated intent is clear: it does not intend to retain control over these records once the visitor has left the White House Complex . . . . Because the Secret Service's actions are not inconsistent with its stated intent, the first factor weighs in its favor.").

ii. **The Secret Service is Able to Use and Dispose of the Records**

The Court finds, however, that the second factor, the ability of the Secret Service to "use and dispose" of the records as it sees fit, weighs against the Secret Service. The Secret Service is

---

skepticism. The MOU was executed *after* the Secret Service created many of the records and *after* the Secret Service was sued for the records.").

[4] The defendant does not explain specifically what litigation was "then-pending." *See* White Decl. ¶¶ 11, 13. The Court assumes that the referenced litigation may consist of the cases, such as *CREW* and *Washington Post*, cited in this opinion. *CREW*, 527 F. Supp. 2d 76; *Wash. Post*, 459 F. Supp. 2d 61.

able to, and does, use the WAVES and ACR records, and also maintains a reasonable amount of flexibility to dispose of the records.

According to the Secret Service's own declarations, the Secret Service uses the records for two main purposes, "to perform background checks to determine the existence of any protective concern" and "to verify the admissibility at the time of visit." Droege Decl. ¶ 5. Therefore, the Secret Service's ability to use the records is clear.

The Secret Service is quick to argue that it does not have the ability to dispose of the records as it sees fit. It is the practice of the Secret Service regularly to transfer copies of the WAVES and ACR records to the ORM. Droege Decl. ¶ 10. This transfer practice, combined with the narrowly constrained use of the records by the Secret Service, was enough for another judge of this Court to conclude that "'the ability of the agency to use and dispose of the record as it sees fit' is quite limited." *Wash. Post*, 459 F. Supp. 2d at 70 (quoting *United We Stand Am., Inc. v. IRS*, 359 F.3d 595, 599 (D.C. Cir. 2004)). Regardless of its stated transfer policy, however, the Secret Service has consistently continued to maintain copies of these records on its systems, and has not sufficiently explained any restriction on its use or disposition of these documents.

The Secret Service claims that "because the President and Vice President retain control of WAVES and ACR records (as set forth in the MOU), the Secret Service lacks disposal authority over these records." Def.'s Mem. at 19-20. In other words, the Secret Service argues that it is unable to dispose of the records freely because they are ultimately White House records and not agency records. This argument is circular. The claimed restrictions on disposal stem from the defendant's assumption that the documents are under Presidential control—the exact point that the defendant seeks to prove to establish that the documents are not subject to FOIA. *See*

*CREW*, 527 F. Supp. 2d at 94 ("Of course, the assumption which this argument rests on—that these documents are under the 'exclusive legal control of the President and Vice-President'—is the focal point of this suit.  The Secret Service is assuming the very point it is trying to prove.").

Therefore, the stated intent of the Secret Service to transfer the records to the ORM and then remove them from its system is not in itself dispositive of the Secret Service's ability to use and dispose of the records freely.  *See CREW*, 527 F. Supp. 2d at 94 ("Although an agency's treatment of documents for preservation purposes may provide some guidance . . . an agency should not be able to alter its disposal regulations to avoid the requirements of FOIA.") (quoting *Bureau of Nat'l Affairs v. U.S. Dep't of Justice*, 742 F.2d 1484, 1493 (D.C. Cir. 1984)).  While the Court duly recognizes that the Secret Service's freedom to use and dispose of the records is somewhat circumscribed, this portion of the calculus does not weigh in the Secret Service's favor.

### iii.     Secret Service Personnel Have Read and Relied Upon the Documents

The third factor—the extent to which Secret Service personnel have read or relied upon the documents—cuts strongly against the Secret Service.  While the Secret Service does not deny reliance upon the WAVES and ACR records, it argues that the purposes for which it relies upon the documents are limited:  Namely, "(1) to enable the Secret Service to perform background checks . . . and (2) to enable the Secret Service to verify the admissibility at the time of visit."  Droege Decl. ¶ 5.  This "limited" reliance is directly tied to the purpose of the records in the first place.  The WAVES and ACR records are created—above all else—to facilitate the precise uses for which the Secret Service relies upon them.  *See Wash. Post*, 459 F. Supp. 2d at 71 ("While the defendant is correct that the Secret Service's use of the WAVES records is limited, the defendant fails to recognize that the very purpose of the WAVES records is limited. . . . [T]he

inquiry as to the agency's use of a document is tethered to the purpose behind the records' creation in the first instance." (internal citations omitted)). Therefore, the fact that the Secret Service uses the documents for the limited purpose for which they were created strongly suggests the documents are "agency records" under FOIA.

### iv. The Records are Integrated into the Secret Service's Record System

The final factor, the degree to which the records were integrated into the Secret Service's record system, also weighs against the Secret Service. The Secret Service acknowledges that "WAVES and ACR records do reside on the Secret Service's servers as part of the [White House Access Control System] data system." Def.'s Mem. at 21; *see also* White Decl. ¶ 7. To resist the characterization of this process as "integration" into the Secret Service's record system, the Secret Service notes that the WAVES and ACR records data are downloaded and burned onto CDs for transfer to the ORM every 30 to 60 days. White Decl. ¶ 11. Additionally, it is the "intent" of the Secret Service to erase the WAVES records from their servers after transfer, and the Secret Service asserts that "active WAVES data on the servers older than 60 days are purged daily and overwritten on the servers." *Id.* ¶ 11.

The fact that the records are transferred is not dispositive in determining whether the records are integrated, however. *See CREW*, 527 F. Supp. 2d at 96 ("The length of time a record is saved skirts the salient issue of whether it was integrated into the agency's record system in the first place."). It is also worth noting that the Secret Service has "retained copies" of all of the WAVES and ACR data in question. White Decl. ¶ 11. Even if the Court assumes that all of the records in question have, in fact, been deleted from the Secret Service's computer system since their initial use, the Secret Service does not contest that the records were at one point an integrated portion of its computer system. *See CREW*, 527 F. Supp. 2d at 96 ("[T]he notion that

an electronic record is not integrated into the Secret Service's computer system simply because the agency deletes the records 30 or 60 days later misses the point."). Therefore, the Court finds that the WAVES and ACR records were substantially integrated into the Secret Service's record system.

### v. Balancing the Factors

The Court finds that, while the intent of the Secret Service is consistent with its assertion that the WAVES and ACR records are not "agency records," the other three factors all cut in the opposite direction. Consistent with other decisions in this District, "the Court concludes that use trumps intent." *CREW*, 527 F. Supp. 2d at 97. Therefore, the WAVES and ACR records are properly considered "agency records" subject to FOIA.

### B.  Constitutional Avoidance

The Secret Service also urges the Court to construe FOIA not to cover the WAVES and ACR records to avoid raising serious Constitutional questions. The Secret Service asserts that FOIA coverage of WAVES and ACR records would raise serious separation of powers concerns because it would amount to "a substantial intrusion on the confidentiality necessary for the President and Vice President to discharge their constitutional duties." Def.'s Mem. at 24.

The Constitutional avoidance doctrine is not applicable here because the Court is not faced with the interpretation of an ambiguous statute. The Supreme Court has explained that "if an otherwise acceptable construction of a statute raises serious constitutional problems, and [] an alternative interpretation of the statute is fairly possible, [courts] are obligated to construe the statute to avoid such problems." *INS v. St. Cyr*, 533 U.S. 289, 299 (2001). The Court agrees, however, with the previous holdings of other judges in this District that, even if defendant's concerns about the "intrusion on the confidentiality necessary for the President and Vice

President to discharge their constitutional duties" are valid ones, they "do not serve as a license for the court to transmute the meaning of an unambiguous statute." *Wash. Post*, 459 F. Supp. 2d at 72; *see also CREW*, 527 F. Supp. 2d at 98-99 ("Because [Constitutional avoidance] applies only where the statute is open to more than one interpretation, however, it has no application in the absence of statutory ambiguity." (internal quotations and citations omitted)).

Additionally, the Court is skeptical of the underlying premise that the inclusion of WAVES and ACR records under FOIA raises any serious Constitutional problems.  As has previously been noted by courts in this District, "[t]o the extent that a visitor record might, if publicly released, disclose confidential presidential communications, the Secret Service has a ready recourse in Exemption 5 [of FOIA]," which exempts privileged documents from disclosure.  *CREW*, 527 F. Supp. 2d at 99.  Therefore, since the statutory language is unambiguous in relation to this issue, and the FOIA has built-in exemptions that mitigate the risk of the precise separation of powers concerns the defendant raises, the Court rejects defendant's interpretive argument.

      **C.**     **National Security Concerns**

Lastly, the Secret Service argues that, even if WAVES and ACR records are subject to FOIA—and the Court holds that they are—it would be "virtually impossible" for the Secret Service to process the plaintiff's FOIA request with respect to records created between January 20, 2009 and September 15, 2009 without potentially compromising national security interests. Def.'s Mem. at 28.  While the Secret Service has been able to process FOIA requests for WAVES and ACR records in the past, defendant argues that the "unprecedentedly broad" nature of this request would make it "virtually impossible for the White House . . . to identify and segregate" sensitive information from that which can be disclosed.  *Id.* at 28.  The Secret Service

appears to argue that it should not be required to even *process* the FOIA request simply because the request is "massively expansive." Def.'s Mem. at 32. The Secret Service notes that, prior to the adoption of the White House's voluntary WAVES disclosure program on September 15, 2009, records in the WAVES database that implicated national security concerns were not flagged or identified in any way. *See* Declaration of Nathan D. Tibbits, dated April 19, 2010 ("Tibbits Decl.") ¶¶ 14-16.[5] Thus, the Secret Service objects to the burden that would be imposed on it and other government officials if they must review "hundreds-of-thousands of visitor records [created between January and September 2009], entry-by-entry, to determine whether it is necessary to exclude specific records of particular visits from disclosure." Def.'s Mem. at 32. While the Court is sensitive to the burdens raised by the plaintiff's broad brush request for "all" records of a certain type over a nine-month period, including the need to review such records for applicable exemptions, the Court is not persuaded that the plaintiff's request requires a blanket rejection.

The Secret Service first asserts that "a subset of these records would unquestionably be exempt from release pursuant to various FOIA exemptions, including Exemption 5." *Id.* at 27. In support of this assertion, the Secret Service states that "although WAVES and ACR records are not classified, a broad-based disclosure of WAVES records could have serious consequences for United States national security interests." *Id.* at 28 (citing *CIA v. Sims*, 471 U.S. 159, 178 (1985), *Edmonds v. Dep't of Justice*, 405 F. Supp. 2d 23, 33 (D.D.C. 2005); *ACLU v. Dep't of Justice*, 321 F. Supp. 2d 24, 37 (D.D.C. 2004)). The Secret Service also cites a case from the Central District of California in which the district court upheld an agency's withholding of

---

[5] The version of the Tibbits Declaration filed on the record was heavily redacted because it contained classified material. *See* ECF No. 13-3. The defendant filed an unredacted copy of the declaration with the Court, which the Court has reviewed *in camera*. The Court's decision takes into account the information conveyed in the classified portions of the declaration.

16

information where the agency "was unable to determine which records in two databases would be exempt from disclosure under FOIA, because those databases 'do not contain any information' necessary to make that determination." Def.'s Mem. at 28-29 (quoting *L.A. Times v. U.S. Dep't of Labor*, 483 F. Supp. 2d 975, 986 (C.D. Cal. 2007)). These arguments are premature. In the cases relied upon by the defendant, the courts were ruling upon the propriety of government assertions of specific FOIA exemptions in response to FOIA requests. *See CIA v. Sims*, 471 U.S. at 178 (Exemption 3), *Edmonds*, 405 F. Supp. 2d at 32-33 (Exemption 1, including an assertion of classification based on a "mosaic" theory); *ACLU v. Dep't of Justice*, 321 F. Supp. 2d at 35-37 (same); *L.A. Times*, 483 F. Supp. 2d at 981-86 (Exemption 6). In this case, the defendant has yet to assert any exemptions specifically. While the Court will require defendant to process the FOIA request, "it is entirely possible that the government will never have to turn over a single document given that the Secret Service may yet be entitled to withhold some or all of the documents under one or more of FOIA's nine exemptions." *Citizens for Responsibility and Ethics in Wash. v. U.S. Dep't of Homeland Sec.*, 532 F.3d 860, 863 (D.C. Cir. 2008) (hereinafter, "*CREW Appeal*") (reviewing an appeal of the district court's denial of a similar government request for summary judgment and dismissing the appeal for lack of jurisdiction).

The Secret Service denies that it should be required to process the FOIA request because certain records relating to appointments made by members of the President's National Security Staff ("NSS") would implicate national security concerns, and because "it is not feasible to re-accumulate the necessary information to determine which appointments between January 20, 2009 and September 15, 2009 could harm our Nation's national security interests if publicly disclosed." Def.'s Mem. at 27-30. The defendant then goes on to generally assert that "review of

17

WAVES records would not end with those generated by the NSS," pointing to other components of the Executive Office of the President that also schedule meetings concerning national security. *Id.* at 30 (citing Tibbits Decl. ¶ 36). At no point does the Secret Service assert, however, that there are not at least *some* records implicated by plaintiff's FOIA request that could be easily searched for, separated out, and disclosed without raising national security concerns. For example, there may be certain White House components whose visitors never implicate national security concerns.[6] *See* Pl.'s Reply in Supp. of Mot. for Partial Summ. J. and Opp'n to Def.'s Cross-Mot. for Summ. J. at 10. Thus, while "there are some limits on what an agency must do to satisfy its FOIA obligations," the defendant has not met its burden to establish that the search requested by the plaintiff is so unreasonable as to require a blanket rejection. *See Nation Magazine, Wash. Bureau v. U.S. Customs Service*, 71 F.3d 885, 891 (D.C. Cir. 1995) (finding it unreasonable to require agency to search through 23 years of unindexed files for records); *cf. Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (reversing in part district court's grant of summary judgment for agency because agency declarations failed to address the adequacy of search of email backup tapes and archives).

Therefore, the proper course of action by the Secret Service is duly to process plaintiff's FOIA request, disclose all segregable, nonexempt records, and then assert specific FOIA exemptions for all records it seeks to withhold. *See CREW Appeal*, 532 F.3d at 863. Of course, the Secret Service may well be able to assert certain FOIA exemptions over large numbers of documents covered by the plaintiff's request. *See, e.g.*, *Edmonds*, 405 F. Supp. 2d at 32-33

---

[6] Defendant's reply brief suggests that Secret Service records relating to visits to White House components that do not implicate national security would still require a burdensome review "to identify those records reflecting non-national security meetings that are nonetheless sensitive for other reasons and are subject to executive privilege" Def.'s Reply in Supp. of Cross-Mot. for Summ. J. at 18 (referring to FOIA Exemption 5, which relates to civil privileges). This argument further underscores the need for the defendant to invoke particular FOIA exemptions and to adduce evidence in support of those exemptions before the Court can rule on their applicability. *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 509 (D.C. Cir. 2011) ("An agency withholding responsive documents from a FOIA request bears the burden of proving the applicability of the claimed exemptions.").

(upholding agency's withholding of information under FOIA exemption where disclosure would release a "mosaic" of classified information); *L.A. Times*, 483 F. Supp. 2d at 986 (finding that a properly asserted FOIA exemption also covered additional records that were not reasonably segregable from the exempt material contained in the same database). At this stage, however, the defendant has not met its burden to show that the requested material either falls within a FOIA exemption or would be unreasonably burdensome to search.

## IV. CONCLUSION

For the reasons detailed above, plaintiff's motion for partial summary judgment is GRANTED and defendant's cross-motion for summary judgment is DENIED. Within twenty (20) days of the issuance of this Memorandum Opinion and the accompanying Order, the parties are directed to meet and confer and to file a joint report proposing a schedule for the remainder of this litigation. The joint report shall also address whether, in light of this Court's ruling on the applicability of FOIA to the records at issue, and given the likelihood that at least some of those records will be covered by FOIA exemptions, the parties are able to agree to resolve this case without the Court's further intervention or to narrow the requests at issue.

DATED: August 17, 2011                                /s/ *Beryl A. Howell*
                                                                        BERYL A. HOWELL
                                                                        United States District Judge